IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HARMONY THOMPSON,

Plaintiff,

v.

ENTERPRISE HOLDINGS, INC. and
ENTERPRISE RENT-A-CAR COMPANY
OF PITTSBURGH, LLC,

Defendants.

2:25-CV-01419-CCW

## **OPINION**

Before the Court are Defendant Enterprise Holdings, Inc.'s Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), ECF No. 18, and Defendant Enterprise Rent-A-Car Company of Pittsburgh's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim and Rule 12(f) Motion to Strike Plaintiff's Demand for Punitive Damages, ECF No. 28. For the following reasons, the Court will grant Enterprise Holdings' Motion and grant in part and deny in part Enterprise Pittsburgh's Motion.

## I.    Background

This case arises out of pro se Plaintiff Harmony Thompson's allegations that she was the victim of racial discrimination (Count I) and retaliation (Count II) in connection with renting cars, in violation of 42 U.S.C. § 1981. Ms. Thompson asserts additional claims of discrimination and retaliation under the Pennsylvania Human Relations Act ("PHRA"), negligent supervision, and intentional infliction of emotional distress ("IIED") (Count III).[1]

---

[1] The Court has jurisdiction over Ms. Thompson's § 1981 claims, which raise a federal question, under 28 U.S.C. § 1331 and may exercise supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367.

On August 19, 2025, Ms. Thompson filed a lawsuit against Enterprise Holdings, Inc. in the Court of Common Pleas of Allegheny County, Pennsylvania. *See* ECF No. 1-1. On September 17, 2025, Enterprise Holdings timely removed the case to this Court. *See* ECF No. 1.

After removal, Ms. Thompson amended her complaint to add factual allegations and to modify the named Defendants. *See* ECF Nos. 9, 15, 17. Ultimately, the parties agreed, and amended the case caption to reflect the current Defendants, Enterprise Holdings, Inc. ("Enterprise Holdings") and Enterprise Rent-A-Car Company of Pittsburgh ("Enterprise Pittsburgh). ECF Nos. 37, 38. Enterprise Holdings is a Missouri corporation with its principal place of business in Missouri, and its subsidiary, Enterprise Pittsburgh, is a Delaware limited liability company that operates a branch in Homestead, Pennsylvania. ECF Nos. 18, 34, 37.

Enterprise Holdings now moves to dismiss the Amended Complaint in its entirety under Federal Rules of Civil Procedure 12(b)(2), arguing that it is not subject to personal jurisdiction in this Court. *See* ECF No. 18. Enterprise Pittsburgh moves separately to dismiss the PHRA and IIED claims contained in Count III. *See* ECF No. 28. For the reasons set forth below, the Court will grant Enterprise Holdings' Motion and grant in part and deny in part Enterprise Pittsburgh's Motion.

## II.    Standard of Review

### A.    12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

"'A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state.'" *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987)). Pennsylvania's long-arm statute permits jurisdiction to be exercised "based on the most minimum contact with the Commonwealth allowed under the

Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). Therefore, in analyzing whether personal jurisdiction exists, this Court must determine "whether, under the Due Process Clause, the defendant has 'certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316–17 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Once a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction." *D'Jamoos* 566 F.3d at 102 (3d Cir. 2009) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). In opposing a motion under Rule 12(b)(2), "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

Personal jurisdiction can either be in the form of general (i.e., all-purpose) personal jurisdiction or specific (i.e., case-linked) personal jurisdiction. *See Bristol-Meyer Squibb Co. v. Superior Court*, 582 U.S. 255, 261–62 (2017). In short,

> A federal court entertaining a suit must possess one of two forms of personal jurisdiction over each defendant. The first type of jurisdiction, known as specific jurisdiction, requires that the plaintiff's claim arise from the defendant's contacts with the forum in which the court sits. In contrast, the court may exercise general jurisdiction over a defendant who possesses systematic and continuous contacts with the forum regardless of whether the plaintiff's claim derives from the defendant's in-forum activities.

*In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 557 (M.D. Pa. 2009) (citations omitted). General jurisdiction analysis looks to whether the defendant is, in effect, "at home" in the forum. *See Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)). For a corporation, its place of

incorporation and principal place of business are the paradigmatic bases for general jurisdiction. *See id.* at 137. The specific jurisdiction analysis, on the other hand, "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). Although physical entrance into the forum state is not required for specific jurisdiction to exist, "what is necessary is a deliberate targeting of the forum. Thus, the 'unilateral activity of those who claim some relationship with a nonresident defendant' is insufficient." *O'Connor*, 496 F.3d at 317 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

"If these 'purposeful availment' and 'relationship' requirements are met, a court may exercise personal jurisdiction over a defendant so long as the exercise of that jurisdiction 'comport[s] with fair play and substantial justice.'" *Miller Yacht Sales*, 384 F.3d at 97 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). In addressing the "fairness question," a district court may consider "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering substantive social policies.'" *Id.* (quoting *Burger King* 471 U.S. at 477).

Finally, "[u]nlike a Rule 12(b)(6) motion, the Court's review of a Rule 12(b)(2) motion is not limited to the face of the pleadings and the Court may rely on sworn affidavits submitted by the parties or other competent evidence that supports jurisdiction." *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 463 (E.D. Pa. 2019) (citing *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603–04 (3d Cir. 1990)).

**B.   12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim.  In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a formulaic recitation of the elements of a cause of action will not do[.]"  *Id.*  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her

5

claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss.").

### III.    Discussion

#### A.    The Court Will Grant Enterprise Holdings, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction

Enterprise Holdings argues that it should be dismissed from this case because it "does not conduct business in the Western District of Pennsylvania and therefore is not subject to personal jurisdiction in this forum." ECF No. 19 at 5. Ms. Thompson responds, in a one-line subsection, that "Enterprise Holdings Is Subject to Personal Jurisdiction Through DRU letters, corporate control, and involvement." ECF No. 20 at 3. For the reasons set forth below, the Court concludes that Ms. Thompson has failed to establish a prima facie basis for personal jurisdiction over Enterprise Holdings.

To begin, Ms. Thompson has not shown that this Court has general jurisdiction over Enterprise Holdings. Enterprise Holdings is incorporated under Missouri law, and its principal place of business is in St. Louis, Missouri. ECF No. 19 at 7. Ms. Thompson has not alleged that Enterprise Holdings has any contacts with Pennsylvania, let alone contacts so "systematic and continuous" as to render Enterprise Holdings, Inc. "at home" in Pennsylvania. *See Bauman,* 571 U.S. at 122; *In re Chocolate Confectionary Antitrust Litig.,* 602 F. Supp. 2d at 557. Accordingly, Ms. Thompson has failed to establish that this Court has general jurisdiction over Enterprise Holdings, Inc.

Ms. Thompson has likewise failed to establish specific jurisdiction over Enterprise Holdings. The United States Court of Appeals for the Third Circuit has articulated a three-part test to determine whether specific jurisdiction exists. First, "the defendant must have 'purposefully

directed [its] activities' at the forum." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Second, "the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Third, and finally, "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with "fair play and substantial justice.'" *Id.* (quoting *Burger King*, 471 U.S. at 476). "The first two parts of the test determine whether a defendant has the requisite minimum contacts with the forum. The threshold requirement is that the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.'" *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102-03 (3d Cir. 2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Here, the factual allegations in Ms. Thompson's Amended Complaint concern only her dealings with Enterprise Pittsburgh. *See* ECF No. 15 ¶¶ 6–12. According to the Amended Complaint, employees of Enterprise Pittsburgh left Ms. Thompson a voicemail containing "derogatory and discriminatory remarks." *Id.* ¶ 7. Ms. Thompson alleges that, after she complained about the voicemail, she was "issued a vehicle damage claim" in retaliation related to a vehicle she had rented from Enterprise Pittsburgh. *Id.* ¶ 10; ECF No. 18-3 (rental agreement between Ms. Thompson and Enterprise Pittsburgh). Ms. Thompson does not allege that she interacted with Enterprise Holdings or any of its employees. And Ms. Thompson's references in her briefing to "DRU letters, corporate control, and involvement" do not establish a prima facie basis for specific jurisdiction over Enterprise Holdings. ECF No. 20 at 3. Her bare references to "corporate control" and "involvement" lack factual support identifying what Enterprise Holdings allegedly controlled or how its conduct is connected to Pennsylvania or the claims at issue, and

are therefore conclusory and insufficient.  Ms. Thompson also appears to argue in her briefing that a letter from the Damage Recovery Unit ("DRU") provides a basis for personal jurisdiction over Enterprise Holdings.  *See* ECF No. 20 at 2;  ECF No. 20-4 (copy of the DRU letter).  While Ms. Thompson states that this letter was sent "from Missouri," she does not argue that Enterprise Holdings had any involvement in creating or sending the letter.  *Id.*  Moreover, the DRU letter, attached to Ms. Thompson's briefing at ECF No. 20-4, does not indicate that it was sent by Enterprise Holdings.  And even if the DRU letter had been sent by Enterprise Holdings, this alone would be insufficient to make out a prima facie case of personal jurisdiction over Enterprise Holdings.  Thus, Ms. Thompson has failed to show that Enterprise Holdings purposefully availed itself of the privileges of conducting activities in Pennsylvania or that Ms. Thompson's claims arise out of or relate to any Pennsylvania-directed conduct by Enterprise Holdings.  Accordingly, the Court will grant Enterprise Holdings' Motion to Dismiss for lack of personal jurisdiction.

### B.      The Court Will Deny Ms. Thompson's Request for Jurisdiction Discovery

Ms. Thompson appears to include a conclusory request for jurisdictional discovery in her response to Enterprise Holdings' Motion to Dismiss.  ECF No. 20 at 3 (including the heading "Jurisdictional Discovery Required[,]" and stating that "[f]actual disputes require discovery.").  Enterprise Holdings opposes the request, arguing that Ms. Thompson fails to "provide some plausible reason why discovery would be productive."  The Court agrees with Enterprise Holdings.

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous."  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (citations omitted).  "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' . . . the plaintiff's right to conduct jurisdictional discovery should be sustained."

8

*Id.* (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). But a plaintiff may not "undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010).

Ms. Thompson has not made the threshold showing necessary to obtain jurisdictional discovery. Although she asserts that "[f]actual disputes require discovery[,]" ECF No. 20 at 3, she does not identify any specific factual dispute implicating personal jurisdiction over Enterprise Holdings. Ms. Thompson's vague reference to "DRU letters, corporate control, and involvement" is likewise insufficient to constitute factual allegations suggesting with "reasonable particularity" the existence of contacts between Enterprise Holdings, Inc. and Pennsylvania. *See Toys "R" Us, Inc.*, 318 F.3d at 456; ECF No. 20 at 3. Because Ms. Thompson has failed to make factual allegations creating a plausible basis for personal jurisdiction over Enterprise Holdings, the Court will deny her request for jurisdictional discovery.

### C.   The Court Will Grant Enterprise Pittsburgh's Motion to Dismiss the PHRA and IIED Claims in Count III of the Amended Complaint

Enterprise Pittsburgh moves to dismiss the PHRA and IIED claims asserted in Count III, arguing that (1) Ms. Thompson failed to exhaust administrative remedies as required by the PHRA, and that (2) Ms. Thompson's IIED claim fails because, inter alia, Ms. Thompson has not plausibly alleged intentional extreme and outrageous conduct by Enterprise Pittsburgh.

First, in response to the Motion's arguments under the PHRA, Ms. Thompson states that she "voluntarily withdraws any claim under the Pennsylvania Human Relations Act" and "that portion of [Enterprise Pittsburgh's] Motion is moot." ECF No. 36 at 1. Accordingly, the Court will treat Ms. Thompson's PHRA claim as waived, and will dismiss that claim with prejudice. *See Wood v. Milyard*, 566 U.S. 463, 470 n.4 (2012) ("A waived claim or defense is one that a party

9

has knowingly and intelligently relinquished[.]"); *Unequal Techs. Co. v. Mercury Screen Printing*, No. 22-2192-KSM, 2023 WL 349249, at \*4 (E.D. Pa. Jan. 19, 2023) (dismissing a claim voluntarily relinquished by the plaintiff with prejudice).

Turning to the IIED claim, under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), the Court applies Pennsylvania law to the Ms. Thompson's IIED claim. The elements of IIED in Pennsylvania are: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Jordan v. Pennsylvania State Univ.*, 276 A.3d 751, 775 (Pa. Super. 2022) (quoting *Madreperla v. Williard Co.*, 606 F. Supp. 874, 879-80 (E.D. Pa. 1985)). "Extreme or outrageous conduct" must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Manco v. St. Joseph's Univ.*, No. CV 22-285, 2024 WL 299265, at \*21 (E.D. Pa. Jan. 25, 2024) (quoting *Jordan*, 276 A.3d at 755); *see, e.g.*, *Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970) (instead of notifying the authorities or seeking medical assistance after fatally striking plaintiff's son with his car, defendant buried the body in a field where the remains were discovered two months later and returned to the plaintiff); *Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236 (Pa. Super. 1981) (defendants intentionally created false records suggesting that plaintiff murdered a third party which law enforcement used to indict plaintiff for homicide); *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979) (Eagles' team doctor lied to the press that plaintiff had a fatal disease). "With regard to the element of outrageousness, it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Johnson v. Caparelli*, 625 A.2d 668, 671 (Pa. Super. 1992). The Court can decide whether the alleged conduct meets the threshold for extreme and outrageous

10

conduct at the motion to dismiss stage. *See Mader v. Union Twp.*, No. 2:20-CV-01138-CCW, ECF No. 170 at 16 (W.D. Pa. Aug. 27, 2021) (Wiegand, J.), *aff'd*, No. 22-1425, 2022 WL 17546953 (3d Cir. Dec. 9, 2022). Liability for intentional infliction of emotional distress is "reserved by the courts for only the most clearly desperate and ultra extreme conduct[.]" *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998).

Here, Ms. Thompson's IIED claim fails because she has not plausibly alleged that Enterprise Pittsburgh intentionally subjected her to extreme and outrageous conduct. Ms. Thompson alleges that an Enterprise Pittsburgh representative left a voicemail containing derogatory and discriminatory remarks, that another employee could be heard encouraging those remarks, and that Defendants later issued a vehicle damage claim after Ms. Thompson complained. *See* ECF No. 15 ¶¶ 7–11. Those allegations, accepted as true, do not describe conduct "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency[.]" *Manco*, 2024 WL 299265, at *21 (quoting *Jordan*, 276 A.3d at 775). Courts within this Circuit have repeatedly held that insults and other offensive or retaliatory conduct are generally insufficient to satisfy this standard. *See Vasquez v. Dorta*, No. 21-1468, 2023 WL 2879411, at * 7 (Pa. Commw. April 11, 2023) ("[P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.") (quoting *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 991 (Pa. 1987)); *Jackson v. Lehigh Valley Physicians Grp.*, No. 08-CV-3043, 2009 WL 229756, at *9 (E.D. Pa. Jan. 30, 2009) ("racial discrimination alone does not meet the 'extreme and outrageous conduct' standard necessary to state a claim for intentional infliction of emotional distress.") (citing *Hargraves v. City of Philadelphia*, No. 05-CV-4759, 2007 WL 1276937, at *3 (E.D. Pa. Apr. 26, 2007) (collecting cases dismissing IIED claims based only on race discrimination and

11

retaliation)). Although the alleged comments and damage claim may be upsetting or offensive, they do not plausibly constitute the type of "atrocious" and "utterly intolerable" conduct necessary to support an IIED claim. *Manco,* 2024 WL 299265, at *21. Accordingly, the Court will dismiss Ms. Thompson's IIED claim. Because Ms. Thompson has not sought leave to amend, the Court will dismiss this claim with prejudice. *See Timmons v. Issac*, No. 1:20-CV-02035, 2023 WL 348992, at *8 (M.D. Pa. Jan. 20, 2023) ("[T]he Court is not obligated to sua sponte grant leave to amend for a non-civil rights claim.") (citing *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251–53 (3d Cir. 2007); *LuLu Shriners v. Twp. of Whitemarsh*, 557 F. Supp. 3d 593, 609 n.17 (E.D. Pa. 2021) (dismissing non-civil rights claims with prejudice where plaintiff "ha[d] not requested an opportunity to amend[.]").

**D.     The Court Will Deny Enterprise Pittsburgh's Rule 12(f) Motion to Strike Ms. Thompson's Demand for Punitive Damages**

Enterprise Pittsburgh also requests that this Court strike Ms. Thompson's demand for punitive damages. ECF No. 29 at 7–9. Ms. Thompson responds that her "allegations demonstrate intentional discrimination and reckless disregard for federally protected rights. Such conduct supports a claim for punitive damages at this stage." ECF No. 36 at 2. She does not identify as to which claims she seeks punitive damages. Because the Court cannot conclude at this stage that Ms. Thompson's Amended Complaint lacks any foundation for punitive damages, Enterprise Pittsburgh's Motion to Strike will be denied.

"Punitive damages may be stricken at the motion to dismiss stage, but only where there is 'no foundation in the complaint for a demand for punitive damages.'" *Doe A.F. v. Lyft, Inc.*, No. 23-3990-KSM, 2024 WL 4479912, at *6 (E.D. Pa. Oct. 10, 2024) (quoting *Boring v. Google Inc.*, 362 F. App'x 273, 283 (3d Cir. 2010)). A plaintiff may seek punitive damages in a § 1981 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it

12

involves reckless or callous indifference to the federally protected rights of others." *Goodwin v. Fast Food Enterprises #3, LLP*, No. 10-23, 2012 WL 1739830 at *5 (W.D. Pa., May 16, 2012) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  State law governs the availability of punitive damages with respect to Ms. Thompson's remaining state law claim, negligent supervision, which Enterprise Pittsburgh has not sought to dismiss.  Under Pennsylvania law, "punitive damages may be awarded for conduct that is outrageous, because of defendant's evil motive or his reckless indifference to the rights of others." *Feld v. Merriam*, 485 A.2d 742, 748 (Pa. 1984) (quoting Restatement (Second) of Torts § 908(2)).

Here, the Court cannot conclude at this stage that there is no foundation in the Amended Complaint for her demand for punitive damages.  Ms. Thompson alleges that Enterprise Pittsburgh engaged in discriminatory conduct, and then pursued a retaliatory damage claim against her.  *See* ECF No. 15 ¶¶ 7–11.  Taken as true at this stage, those allegations are sufficient to permit Ms. Thompson's request for punitive damages to proceed.  Accordingly, Enterprise Pittsburgh's Motion to Strike Ms. Thompson's demand for punitive damages will be denied.

## IV.    Conclusion

For the foregoing reasons, the Court will grant Enterprise Holdings' Motion to Dismiss and dismiss Enterprise Holdings as a Defendant without prejudice.  Additionally, the Court will grant in part and deny in part Enterprise Pittsburgh's Motion to Dismiss, ECF No. 28, as follows: the Court will grant Enterprise Pittsburgh's Motion insofar as it will dismiss the PHRA claim and the IIED claim in Count III with prejudice.  The Court will deny Enterprise Pittsburgh's Motion to Strike Ms. Thompson's request for punitive damages.

DATED this 24th day of June, 2026.

13

BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge



cc (via ECF email notification):

All Counsel of Record

cc (via U.S. Mail):

Harmony Thompson
2618 Fayette Street
McKeesport, PA 15132

14